UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA SUMNER,

    Plaintiff,

v.                                         CASE NO. 8:12-CV-1475-T-23MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is an action for review of the administrative denial of supplemental security income (SSI).  *See* 42 U.S.C. § 1383(c)(3).  Plaintiff contends that the Administrative Law Judge (ALJ) failed to properly evaluate her residual functional capacity (RFC).  After considering the parties' briefs and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence.  I therefore recommend the Commissioner's decision be affirmed.

    *A.*     *Background*

    Claimant Samantha Sumner was born on September 25, 1977. (R. 29)  She has a GED, and she attended college for one year.  (R. 41) She has past work experience as a general clerk and cashier, a telemarketer, a customer service retail clerk, and a data entry clerk. (R. 29)  Claimant alleges disability commencing February 1, 2008, due to fibromyalgia, temporomandibular joint (TMJ) disorder, herniated discs in her back and neck, headaches, anxiety and depression, chronic fatigue syndrome, and an allergy to the sun. (R. 42-43)  After a hearing, the ALJ found Plaintiff has the severe impairments of fibromyalgia and anxiety. (R. 22) Aided by the testimony of a vocational

expert (VE) and a medical expert, the ALJ determined that Plaintiff is not disabled as she has the RFC to perform sedentary work with the following limitations: "no more than occasional stooping, crawling and bending; mild limitation in the ability to perform activities of daily living, moderate difficulty in the social functioning and mild deficit in concentration, persistence or pace resulting in 40% to 50% deficit for the completion of detailed instructions; could do simple and repetitive tasks and maintain her persistence and pace for the completion of simple and repetitive tasks; no episodes of decompensation; and no more than limited public contact." (R. 24)  The ALJ determined that, with this RFC, the Claimant could not perform her past relevant work but could perform work as a production worker (assembler and helper) and shade assembler.[1] (R. 30) The Appeals Council denied review.  Plaintiff, who has exhausted her administrative remedies, filed this action.

  B. *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that establish a "sequential evaluation process" to determine

---

[1] These jobs exist in very low numbers in Plaintiff's local area.  Nonetheless, the ALJ found that "the numbers are not so low regionally as to be insignificant and they would exist regionally at 10% of the national level." (R. 30) Plaintiff does not challenge this finding.

whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C.  Discussion

Plaintiff's brief is not well organized, and it is difficult to discern her argument. She devotes significant space to summarizing the medical evidence and describing her fibromyalgia and anxiety as severe impairments. For example, Plaintiff asserts that under Social Security Ruling 12-2p, she "has the medical impairment of fibromyalgia which meets step 2 in the 5-step sequential evaluation process." (Doc. 13 at 18). But the ALJ does not dispute that Plaintiff's fibromyalgia and anxiety are severe. (*See* R. 22) Plaintiff's remaining contention appears to be that the ALJ's RFC determination is not supported by substantial evidence (doc. 13 at 15). I discuss this argument below and conclude that the ALJ's decision is supported by substantial evidence.

1.  *Plaintiff's RFC to perform sedentary work*

Plaintiff argues the ALJ erred in determining that she maintains the RFC for sedentary work. She states that "it is not reasonable to conclude that, in light of over five and a half years of battling pain even with the many medications, plaintiff has the residual functional capacity (RFC) to do any kind of sustained work-related activities on a regular continuous basis. . . ." (Doc. 13 at 19) In support, however, Plaintiff emphasizes the severity of her fibromyalgia and mental illness. As mentioned above, the ALJ found these impairments to be severe at step two of the sequential evaluation process.[2] (R. 22)

The relevant focus for the ALJ in determining a claimant's RFC is a consideration of all impairments and the extent to which the impairments are consistent with medical evidence. 20

---

[2] Plaintiff's argument begins on page 14 of her brief under the broad heading "Whether the weight of the evidence supports the ALJ's finding that Plaintiff is not disabled." (Doc. 13 at 14). The argument is six pages long but is largely a recitation of Plaintiff's treatment history. As stated above, I am unable to discern any other argument from Plaintiff's filing other than the RFC one discussed here.

4

C.F.R. § 416.945. The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. *Id*. The RFC determination is ultimately reserved for the ALJ. 20 C.F.R. § 416.946(c).

Fibromyalgia is a unique impairment, and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on a claimant's ability to work. The Eleventh Circuit has observed:

> '[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.' *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

*Stewart v. Apfel*, 245 F.3d 793, 2000 WL 33125958 (11th Cir. Dec. 20, 2000) (citation omitted). The circuit also requires an ALJ to support any rejection of a claimant's pain complaints with acceptable evidence. *Moore v. Barnhart,* 405 F.3d 1208, 1211-12 (11th Cir. 2005) (although fibromyalgia lacks objective signs, substantial evidence supported the ALJ's findings that the daily activities of a Plaintiff who suffered from fibromyalgia were inconsistent with her pain testimony).

By definition, Plaintiff's fibromyalgia significantly limits her physical and mental ability to do basic work activities. *See* 20 C.F.R. §416.921. Here, the ALJ did not dispute the Plaintiff's fibromyalgia diagnosis and concluded it was a severe impairment. (R. 22) Instead, he found the Plaintiff's medically determinable impairments, including fibromyalgia, could reasonably be expected to produce the alleged symptoms but that the claimant's statements regarding the limiting effects of these symptoms are not credible. (R. 24-25) He determined that Plaintiff was capable of

performing sedentary work in spite of her impairments. (R. 24) In reaching this determination, the ALJ did not discount the opinion of any treating source. In fact, no source, treating or otherwise, opined that Plaintiff experienced limitations more severe than those recognized by the ALJ.

In addition to noting that no treating source's opinion supported a more restrictive RFC, the ALJ found that Plaintiff's minimal treatment undermined her allegations of disabling impairments. (R. 25) Indeed, the record fails to show extensive treatment related to Plaintiff's fibromyalgia. I note that the ALJ incorrectly stated that Plaintiff "never received rheumatologic treatment" when, in fact, Plaintiff treated with Arnaldo Torres, M.D., a rheumatologist at the St. Petersburg Arthritis Center, from October 2005 through November 2008. (R. 25, 254-77) Despite this mischaracterization of the nature of Plaintiff's treatment, however, the ALJ summarized Dr. Torres's treatment notes and relied on them in finding Plaintiff's fibromyalgia to be severe. (R. 25) This is important: Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize the disorder. *See Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003).

But the ALJ did not question Dr. Torres's findings. (R. 25-26) In October 2006, Plaintiff told Dr. Torres that she is in pain every day with more pain concentrated behind her knees and her lower back. (R. 256) Dr. Torres found Plaintiff had good range of motion in her hips and knees and noted she had no inflammation or synovitis. He prescribed her the pain medications of Darvocet and Flexoril. (R. 256-57) In December 2006, Dr. Torres treated Plaintiff for her persistent pain in her neck and shoulder and for her trouble sleeping. (R. 258) Dr. Torres noted that she had tenderness to her neck and shoulders but adequate range of motion. He observed that Plaintiff did not experience pain with straight leg raising and had no synovitis of her upper or lower extremities. (*Id.*)

In March 2007, Dr. Torres noted Plaintiff's multiple trigger points and advised Plaintiff to engage in "gentle exercise" and then to "progress to aerobic exercise." (R. 277) In August 2007, he noted that Plaintiff was "overall stable" and that Lyrica was helping her sleep better. Dr. Torres again found no evidence of synovitis and no limitations of Plaintiff's activities of daily living. (R. 272) He noted that Plaintiff "needs to exercise on a regular basis" and referred her to a psychiatrist.[3] (R. 272) Finally, Dr. Torres commented in September 2008 that Plaintiff was "overall better" and that she reported that her fibromyalgia was "a bit better." (R. 337) Dr. Torres prescribed water exercises to address her fibromyalgia and lower back pain.

    The ALJ also considered Plaintiff's daily activities and found them inconsistent with a completely disabled person. (R. 26) She testified to getting her two children ready for school in the mornings and taking care of them every day, activities the ALJ characterized as "quite demanding both physically and emotionally." (R. 26) Plaintiff testified that she is never alone in her home because her older daughter is home-schooled. (R. 57) This suggests she is the one instructing her daughter, a fact corroborated by Dr. Torres's June 1, 2007, treatment record in which he noted Plaintiff's "pain meds allow her to function, do house chores, [and] she does home schooling." (R. 275) These activities are not consistent with someone incapable of performing sedentary work.

    The ALJ also assigned "full weight" to the opinion of medical expert Sergio Bello, M.D. (R. 26), who testified that "there certainly is a consistent diagnosis of fibromyalgia which physically is a subjective complaint and the report of trigger points. But what I also see is that there is no evidence of restriction and range of motion and there's no reported evidence of synovitis or

---

[3] Plaintiff cancelled at least six appointments with Dr. Torres between March 2007 and January 2008. (R. 264)

inflammation of any of those joints." (R. 63) Dr. Bello, referring to Dr. Torres's treatment notes, indicated that "although there is pain, there's no reason why the claimant can't engage in some physical activity." (R. 64) The expert opined that an RFC for "light [work] might be appropriate" but because of Plaintiff's subjective complaints, felt more comfortable with a sedentary RFC. (R. 65) The ALJ agreed.

The ALJ also relied on the opinion of consultative examiner Ladapo Shyngle, M.D., who examined Plaintiff in September 2008, the same month that Dr. Torres noted Plaintiff was "overall better" and her fibromyalgia was a "bit better." (R. 27, 337, 310-13) Dr. Shyngle observed that Plaintiff had "18 trigger points noted for fibromyalgia in all the classical areas" but that her cervical spine "shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." (R. 312) She had reduced range of motion in her lumbar spine and her bilateral shoulder joints but full range of motion of her elbows, forearms, wrists, hips, knees, and ankles. (*Id.*) He concluded that Plaintiff had "moderate to marked restriction for *strenuous* physical activity because of fibromyalgia." (R. 313, emphasis added) The ALJ assigned this opinion great weight but nonetheless limited Plaintiff to sedentary work, an RFC that reflects more restrictive limitations than those found by Dr. Shyngle.

In her brief, Plaintiff details her treatment at Community Health Centers from October 2005 through September 2008 (R. 279-92, 341), and her treatment at Sun Coast Center for Community Mental Health from October 2008 through January 2009.[4] (R. 345-90) None of these records is inconsistent with Plaintiff's RFC. The ALJ's opinion, including the RFC determination, comports

---

[4] During this time period, Plaintiff had sporadic therapy sessions and multiple no-shows. (R. 346, 355, 357, 379)

with the weight of the evidence. The ALJ properly considered Plaintiff's fibromyalgia and anxiety in fashioning her RFC.

        D.    *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1.     The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on August 5, 2013.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).